**ALPHA THERAPEUTIC CORPORATION, a California Corp., and Clyde McAuley, Plaintiffs–Appellants,**

v.

**NIPPON HOSO KYOKAI, a Japanese special juridic entity, a/k/a Japan Broadcasting Corp., Defendant–Appellee.**

No. 98–55642.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 2, 1999

Filed Dec. 28, 1999.

John E. Porter, Paul, Hastings, Janofsky & Walker, Los Angeles, CA, for the plaintiffs-appellants.

Paul L. Hoffman, Bostwick & Hoffmann, Santa Monica, CA and Douglas E. Mirell, Robert N. Treiman, Loeb & Loeb, Los Angeles, CA, for the defendant-appellee.

Before: PREGERSON, NOONAN, and O'SCANNLAIN, Circuit Judges.

PREGERSON, Circuit Judge:

Alpha Therapeutic Corporation ("Alpha") and Clyde McAuley (collectively "Appellants") appeal the district court's dismissal of their diversity action against Nippon Hoso Kyokai ("NHK"), asserting claims for slander, conversion, trade libel, and invasion of privacy. NHK, a Japanese television broadcaster, broadcast two programs that allegedly contained defamatory statements about Alpha and McAuley—the "Hour Long Program," which NHK broadcast in Japan, and the four-minute "Good Morning Japan Program" ("Morning Program"), which NHK broadcast in both Japan and the United States. Through these programs NHK stated that Appellants: knowingly shipped blood products to Japan that were contaminated with the AIDS virus, falsified documents about its investigation of a blood donor, and falsely reported information about the donor to the United States Food and Drug Administration ("FDA").

We have jurisdiction over this matter under 28 U.S.C. § 1291. We find that NHK did not implicitly waive immunity under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1603, by failing to assert immunity under the FSIA in its Answer to the Complaint. Accordingly, we affirm the district court's dismissal of the Hour Long Program defamation claim on sovereign immunity grounds under the FSIA. We also agree with the district court's conclusion that NHK is not entitled to immunity under the FSIA for the Morning Program defamation claim because that claim, unlike the Hour Long Program claim, falls under the commercial activity exception to the FSIA.

We reverse the district court's determination that the "tortious activity" exception to the FSIA applies to Alpha's conversion claim. We also reverse the district court's dismissal of McAuley's invasion of privacy claim for failure to state a claim under California law. In addition, we reverse the court's dismissal of the Morning Program defamation claim and the conversion claim for forum non conveniens.

I.

Alpha is a California corporation that produces blood plasma derivatives. McAuley is a California resident who served as Alpha's medical director from 1978 to 1999. NHK is Japan's only public broadcasting corporation. It was established by the Japanese Broadcast Law nearly 50 years ago and is still managed by appointees of the Japanese government. NHK has an office in Los Angeles.

On January 19 and 25, 1997, NHK broadcast the Hour Long Program, which allegedly contained defamatory statements about McAuley and Alpha, on television in Japan. NHK promoted the Hour Long Program with a four-minute news story televised on January 18, 1997, during the Morning Program. Alpha alleges that this four-minute news story also contained defamatory statements. The four-minute news story was broadcast twice in the

United States on a Japanese language channel.

NHK developed the Hour Long Program and the Morning Program from 15,000 pages of documents. These 15,000 pages were confidential, internal documents belonging to Alpha ("Alpha Documents"). Alpha had disclosed these documents pursuant to a protective order solely in connection with unrelated litigation pending in federal court in the United States. In 1996, NHK received bootleg copies of the Alpha documents from an unnamed source.

To produce the programs, NHK sent a team of employees to the United States to conduct research. The NHK employees interviewed a number of Americans, including Appellant McAuley. An NHK reporter interviewed McAuley on the evening of December 27, 1997, at his home in California. The reporter had a hidden microphone on his necktie and secretly recorded the interview with McAuley. A camera operator and sound technician sat in a van parked on the street in front of McAuley's home. This interview was included in the Hour Long Program. McAuley claims that this interview constituted an invasion of privacy.

On March 3, 1997, Appellants filed a complaint in California state court against NHK alleging slander, conversion, claim and delivery, invasion of privacy, and trade libel. On April 2, 1997, NHK removed the case to federal court under 28 U.S.C. § 1441(d). Several weeks later, on April 22, 1997, NHK filed its Answer. In its Answer, NHK asserted 14 separate defenses. The Answer asserted lack of subject matter jurisdiction as a defense, but did not specifically assert immunity under the FSIA. NHK claims that it was first informed about the FSIA defense on May 9, 1997. NHK could have amended its Answer as a matter of right until May 12, 1997. NHK, however, never amended its Answer to include this additional defense.

Upon Appellants' request, on May 21, 1997, the district court issued an Order disqualifying NHK's counsel due to a conflict of interest.

With new counsel assigned, NHK filed two motions to dismiss on June 2, 1997: a motion to dismiss the action for lack of jurisdiction under the FSIA and a motion to dismiss for forum non conveniens. The district court granted both of these motions in March 1998. The court ruled that NHK was entitled to immunity under the FSIA for the Hour Long Program defamation claim, but that the NHK was not entitled to FSIA immunity for the Morning Program defamation claim because that claim constituted "commercial activity." Nonetheless, the court dismissed the Morning Program defamation claim as well as the conversion claim for forum non conveniens. Additionally, the court dismissed McAuley's invasion of privacy claim, ruling that McAuley did not state a claim for invasion of privacy.

II. Foreign Sovereign Immunities Act

■ "The existence of subject matter jurisdiction under the FSIA is a question of law reviewed de novo." *Adler v. Federal Republic of Nigeria*, 107 F.3d 720, 723 (9th Cir.1997). We review any factual findings made by the district court regarding jurisdictional issues for clear error. *See id.*

■ "The FSIA is the exclusive source of subject matter jurisdiction over suits involving foreign states and their instrumentalities." *Gates v. Victor Fine Foods*, 54 F.3d 1457, 1459 (9th Cir.1995) (citing *Joseph v. Office of Consulate General of Nigeria*, 830 F.2d 1018, 1021 (9th Cir. 1987)). Under the FSIA, "a foreign state shall be immune from the jurisdiction of the Courts of the United States and of the States" except under certain circumstances. 28 U.S.C. § 1604. A "foreign state" includes any "agency or instrumentality of a foreign state." 28 U.S.C. § 1603(a).

■ This court has articulated a test for determining jurisdiction under the FSIA. Initially, "the presumption under [the] FSIA is that actions taken by foreign states or their instrumentalities are sovereign acts and thus protected from the exercise of our jurisdiction, unless one of the enumerated exceptions of FSIA applies." *Gregorian v. Izvestia,* 871 F.2d 1515, 1528 n. 11 (9th Cir.1989). Defendant, NHK, has the initial burden of demonstrating that it is an agent or instrumentality of a sovereign state and that it is protected by immunity. *See id.* "The [Appellants] then have the burden of going forward with the evidence by offering proof that one of the FSIA exceptions applies." *Id.*

### A. "Agency or Instrumentality"

■ To qualify for immunity under the FSIA, NHK must demonstrate that it is an "agency or instrumentality" of Japan. The FSIA defines an "agency or instrumentality of a foreign state" as:

> any entity—(1) which is a separate legal person, corporate or otherwise, and (2) which is an organ of a foreign state or a political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or a political subdivision thereof, and (3) which is neither a section 1332(c) and (d) of this title, nor created under the laws of any third country.

28 U.S.C. § 1603(b). Here, Appellants only disputed the second requirement. Therefore, the issue is whether NHK is an "organ" of Japan or a political subdivision thereof, or is majority-owned by Japan or a political subdivision. We conclude that NHK is an "organ" of Japan.

We construe the terms "organ" and "agency or instrumentality" in the FSIA broadly. *See Gates,* 54 F.3d at 1460; *see also* H.R.Rep. No. 94–1487, 94th Cong. 2nd Sess. (1976), reprinted at 1976 U.S.C.C.A.N. 6604, 6614. There is no clear test to determine whether or not an entity qualifies as an "organ" of a foreign state. The district court, in determining

that NHK is an "organ" of Japan, considered the nature of NHK's creation, organization, and operations.

Some of the details that the court considered include: (1) NHK was created by the Japanese Broadcast Law and under this Law, NHK must broadcast for the "public welfare"; (2) NHK's programming must satisfy government-mandated goals including the promotion of Japanese culture, industry, trade, and providing entertainment to Japanese citizens abroad; (3) the management of NHK consists of a twelve-member Board of Governors, all of whom are appointed by the Japanese Prime Minister with consent of the Diet (the Japanese Parliament); (4) the Minister of Posts and Telecommunications ("Minister") supervises the Board and must review NHK's budget every year, and NHK's budget must be approved by the Diet; (5) if the budget is not approved by the Diet, NHK continues programming only with the approval of the Minister; (6) NHK's funding is derived from a government-mandated receiver's fee on all persons in Japan who own television sets, and NHK is the only broadcasting company to be financed by a fee backed by the authority of the Japanese government; (7) any amendment to the Articles of Corporation that govern NHK's operations must be adopted and approved by the Minister; (8) NHK's operations are limited to the statutory purposes set out in the Japanese Broadcast Law; (9) unlike private Japanese broadcasters, NHK cannot earn profits and carries no commercial advertisements; and (10) NHK is the only broadcaster that Japan's Prime Minister has termed a "designated public institution."

■ Appellants' argument that NHK is not an "organ" of Japan because it has autonomy and independence from the Japanese government is without merit. An entity may obtain immunity under the FSIA even if it has some autonomy from the foreign government. *See Gates,* 54 F.3d at 1461 ("that the [state] is not direct-

ly involved in day-to-day activities of [the entity] does not mean that it is not exercising control over the entity"). Japan has considerable control over the content of NHK's programming, budget, and operations. Considering the totality of the circumstances, the fact that NHK maintains some autonomy from the Japanese government is inconsequential.

Accordingly, we conclude that the district court correctly determined that NHK is an "organ" of Japan. Because we find that NHK is an "organ" of Japan we need not address the alternative argument raised by NHK, namely, that it is owned by Japan.

## B. Implicit Waiver

A foreign state is not immune from suit under the FSIA if it "has waived its immunity either explicitly or by implication." 28 U.S.C. § 1605(a)(1). We have repeatedly recognized that "the waiver exception is narrowly construed." *Corporacion Mexicana De Servicios Maritimos, S.A. De C.V. v. M/T Respect,* 89 F.3d 650, 655 (9th Cir.1996) (hereinafter "CMSM"); *Estate of Ferdinand Marcos Human Rights Litigation,* 94 F.3d 539, 546 (9th Cir.1996) (citations omitted); *Siderman de Blake v. Republic of Argentina,* 965 F.2d 699, 720 (9th Cir.1992) (quoting *Joseph,* 830 F.2d at 1022). The House Report that accompanied the passage of the FSIA gave three examples of an implied waiver: (1) where a foreign state has agreed to arbitration in another country; (2) where a foreign state has agreed that the law of particular country should govern a contract; or (3) where a foreign state has filed a responsive pleading without raising the defense of sovereign immunity. *See* H.R.Rep. No. 1487, 94th Cong., 2d Sess. 18 (1976), reprinted in 1976 U.S.C.C.A.N. 6604, 6617.

■ We conclude that NHK's failure to assert immunity under the FSIA in its Answer did not result in an implied waiver of FSIA. As we recently noted, "[t]he implicit waiver clause of section 1605(a)(1) has [ ] been narrowly construed; courts rarely find that a nation has waived its sovereign immunity without strong evidence that this is what the foreign state intended." *CMSM,* 89 F.3d at 655 (quoting *Rodriguez v. Transnave Inc.,* 8 F.3d 284, 287 (5th Cir.1993)). Moreover, we have been reluctant to deny a party the FSIA defense on the sole basis of an implied waiver. *See Joseph,* 830 F.2d at 1023 n. 6 ("we are reluctant to rest our holding that the district court has jurisdiction over Joseph's basic claims—solely on the waiver exception").

Here, NHK raised the FSIA defense in a motion to dismiss on June 2, 1997, a mere three months after Appellants filed the Complaint in state court. As the district court noted in its order, and as Appellants conceded at oral argument, "[n]o court has ever found waiver based on similar circumstances." Also, NHK did initially assert a general defense based upon lack of subject matter jurisdiction. Moreover, nothing in the record indicates that NHK *intended* to waive the FSIA defense. NHK states that it was unaware of the availability of the defense until its former counsel mentioned it in May 1997, and that it does not employ any in-house counsel who are familiar with American law.

Because we must construe the implied waiver provision of the FSIA narrowly and because there are no cases in which a court found that similar conduct constituted an implicit waiver, we affirm the district court's ruling that NHK did not waive the FSIA defense.

## C. The "Commercial Activity" Exception

■ Under the commercial activity exception to the FSIA, a foreign sovereign is not immune in any case that is based upon either:(1) "commercial activity carried on in the United States by a foreign state" or (2) "an act outside the territory of the United States in connection with commercial activity of the foreign state elsewhere

and that act causes a direct effect in the United States." 28 U.S.C. § 1605(a)(2). Here, the district court found that the Hour Long Program and the Morning Program broadcasts constituted "commercial activity." The district court determined that NHK's broadcast of the Morning Program fell under the exception because NHK broadcast the Morning Program in the United States. *See* 28 U.S.C. § 1605(a)(2) (commercial activity exception applies when action is carried on in the United States by the foreign state). We agree.

To establish that this exception applies to the Hour Long Program, however, Appellants must demonstrate that NHK's broadcast of that program in Japan caused a "direct effect" in the United States. *Id.* The district court found that the Hour Long Program did not have a "direct effect" in the United States and held that the commercial activity exception did not apply. Again, we agree.

▬▬▬ "An effect is 'direct' if it follows as an immediate consequence of the defendant's activity." *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 618, 112 S.Ct. 2160, 119 L.Ed.2d 394 (1992) (citation omitted). Mere financial loss suffered in the United States as a result of the action abroad by a foreign state does not constitute a "direct effect" and thus does not create subject matter jurisdiction under the FSIA. *Adler*, 107 F.3d at 726–27; *Gregorian*, 871 F.2d at 1527. Additionally, injury to feelings suffered in this country by a wrongful act in a foreign country is also not a "direct effect." *See Berkovitz v. Islamic Republic of Iran*, 735 F.2d 329, 332 (9th Cir.1984) (holding that murder of individual in Iran, although causing great suffering to his family, did not have "direct effect" in U.S. that would permit jurisdiction under 28 U.S.C. § 1605(a)(2)). Rather, to establish a "direct effect" in the United States resulting from an act abroad by a foreign state, Appellants must establish that "something legally significant actually happened in the U.S." *Adler*, 107

F.3d at 727; *Gregorian*, 871 F.2d at 1527 (quoting *Zedan v. Kingdom of Saudi Arabia*, 849 F.2d 1511, 1515 (D.C.Cir.1988)).

In determining whether or not the Hour Long Program had a direct effect, the district court made several findings of fact. We review findings of fact on jurisdictional issues for clear error. *See Adler*, 107 F.3d at 723. The court found that: (1) any and all copies of the Hour Long Program that may be in the United States are unauthorized, "pirate" versions of the broadcast; (2) NHK has never been asked to give permission to make the Hour Long Program available on videocassette in the United States, nor has any such permission been given; and (3) although NHK has a royalty agreement with Japanese video merchants in New York and Los Angeles for the sale of other videos, the existence of this agreement does not indicate that NHK ever approved of the distribution of the Hour Long Program. Appellants have failed to demonstrate that these findings are clearly erroneous. Given the district court's findings, NHK is not responsible for any re-broadcast of the Hour Long Program in the United States or any sales of videos of the program in the United States.

Appellants argue that the Hour Long Program had a direct effect in this country because the Morning Program's four-minute segment, broadcast in the United States, included information from and thus was a result of, the Hour Long Program. We reject Appellants' argument because the broadcast of the Morning Program in the United States was not a "direct effect" of the broadcast of the Hour Long Program in Japan.

There is no evidence that NHK broadcast the Morning Program in the United States to promote the Hour Long Program because, as noted above, NHK did not authorize any broadcast or re-broadcast of the Hour Long Program in the United States. Additionally, there is no evidence that NHK ever intended to broadcast the Hour Long Program in the United States

or sell videos of that program in the United States. Moreover, Appellants' translation of the four-minute segment indicates that the segment primarily discussed Alpha's alleged misconduct and only briefly, at the end of the segment, contained language promoting the Hour Long Program. The promotion told viewers: "tomorrow night, we'll report the details of what we've found in the [Hour Long Program]." Consequently, Appellants have not shown that NHK's broadcast of the Morning Program in the United States "follow[ed] as an immediate consequence" of NHK's broadcast of the Hour Long Program in Japan. *See Weltover, Inc.,* 504 U.S. at 618, 112 S.Ct. 2160.

Although the broadcast of the Morning Program in the United States may have been an indirect effect of the broadcast of the Hour Long Program in Japan, an *indirect* effect is insufficient. To establish that the commercial activity exception applies, Appellants must demonstrate that the broadcast of the Hour Long Program in Japan had a *"direct effect"* in the United States. 28 U.S.C. § 1605(a)(2) (emphasis added). Because Appellants have not done so, we affirm the district court's ruling that the Hour Long Program defamation claim does not fall within the commercial activity exception to the FSIA.

### D. "Tortious Activity" Exception

■ Alpha's conversion claim against NHK is based upon NHK's unauthorized possession of the confidential Alpha Documents. The district court determined that NHK implicitly conceded that a conversion claim falls within the tortious activity exception of the FSIA and denied NHK's motion to dismiss. But NHK did not concede that the tortious activity exception applied to the conversion claim at issue in this case. To the contrary, NHK argued that because Alpha did not establish that the conversion occurred in the United States, the tortious activity exception did not apply. We agree that Alpha did not establish that the alleged conversion occurred in the United States and we reverse.

The "tortious activity" exception exempts from FSIA immunity claims for losses "occurring in the United States and caused by the tortious acts or omission of that foreign state or of any official or employee of that foreign state while acting within the scope of his office or employment." [1] 28 U.S.C. § 1605(a)(5). NHK argues that the conversion occurred in Japan, and consequently, the tortious activity exception is inapplicable. The only evidence demonstrating that the conversion may have occurred in Japan is the uncorroborated declaration of an NHK agent who claims to have received the documents in Japan from a confidential source. Alpha made discovery requests to obtain more information about the location of the alleged conversion, however, NHK refused to respond.

Although the evidence that the conversion occurred in Japan is weak, Alpha has the burden of demonstrating that the tort occurred in the United States. *See Gregorian,* 871 F.2d at 1528 n. 11. Because Alpha has failed to meet this burden, we dismiss for lack of subject matter jurisdiction. We recognize that Alpha's failure to meet this burden resulted, in part, from NHK's refusal to reveal the source of the Alpha Documents. Consequently, if Alpha obtains additional evidence demonstrating that the conversion occurred in the United States, the district court may reinstate the conversion claim against NHK.

### E. FSIA Discovery

■ The district court did not err in denying Appellants' request for FSIA discovery. When jurisdictional facts under the FSIA are in dispute, "the parties should be allowed to conduct discovery for

---

1. The defamation claim for the Hour Long Program did not fall under the tortious activity exception because this exception excludes

any claim arising out of libel or slander. *See* 28 U.S.C. § 1605(a)(5)(B).

the limited purpose of establishing jurisdictional facts before the claims can be dismissed." *Siderman de Blake v. Republic of Argentina,* 965 F.2d 699, 713 (9th Cir.1992). In determining whether or not to permit jurisdictional discovery, however, there is a delicate balance "between permitting discovery to substantiate exceptions to statutory foreign sovereign immunity and protecting a sovereign's or sovereign agency's legitimate claim to immunity from discovery." *First City, Texas–Houston N.A. v. Rafidain Bank,* 150 F.3d 172, 176 (2d Cir.1998) (quoting *Arriba Ltd. v. Petroleos Mexicanos,* 962 F.2d 528, 534 (5th Cir.1992)). To ensure that this balance is preserved, "discovery should be ordered circumspectly and only to verify allegations of specific facts crucial to an immunity determination." *Texas–Houston,* 150 F.3d at 172 (quoting *Arriba Ltd.,* 962 F.2d at 534).

 If Appellants had demonstrated to the district court that there were significant jurisdictional facts in dispute, Appellants would have been entitled, under *Siderman,* to conduct limited discovery about those facts. But here, Appellants merely sought to send a letter rogatory to the Japanese government asking whether it claims that NHK is a state "agency or instrumentality" under the FSIA. Receiving a foreign government's official statement about whether or not an entity is entitled to immunity is not required under the FSIA. *Cf. Intercontinental Dictionary Series v. De Gruyter,* 822 F.Supp. 662, 672 (C.D.Cal.1993) (rejecting argument that a government official must request immunity before the court can consider immunity under the FSIA). Because Appellants failed to establish the need to conduct discovery to resolve a jurisdictional issue, the court did not err in denying their request for FSIA discovery.

### III. Invasion of Privacy Claim

The district court determined that NHK implicitly conceded that Dr. McAuley's invasion of privacy claim fell within the tortious activity exception to the FSIA. Although the court determined that NHK was not immune under the FSIA on the invasion of privacy claim, the court dismissed the claim because it found that McAuley failed to state a claim as a matter of law. We conclude that McAuley did state a claim for invasion of privacy and therefore reverse.

 A dismissal for failure to state a claim is a ruling on a question of law subject to de novo review. *See Gilligan v. Jamco Dev. Corp.,* 108 F.3d 246, 248 (9th Cir.1997). "The reviewing court considers only the contents of the complaint and construes all allegations of material fact in the light most favorable to the nonmoving party." *See id.* (citing *Smith v. Jackson,* 84 F.3d 1213, 1217 (9th Cir.1996)). A claim should not be dismissed " 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Id.* (quoting *Conley v. Gibson,* 355 U.S. 41, 45– 46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Here, in reviewing the court's dismissal of McAuley's claim for invasion of privacy, we must construe all of the facts in the light most favorable to McAuley.

 McAuley's action for invasion of privacy has two elements: (1) intrusion into a private place, conversation, or matter, (2) in a manner highly offensive to a reasonable person. *See Shulman v. Group W Productions, Inc.,* 18 Cal.4th 200, 231, 74 Cal.Rptr.2d 843, 955 P.2d 469 (1998). California Penal Code § 632(a) provides:

> Every person who, intentionally and without the consent of all parties to a confidential communication, by means of any electronic amplifying or recording device, eavesdrops upon or records the confidential communication, whether the communication is carried on among the parties in the presence of one another or by means of a telegraph, telephone or other device, except a radio, shall be punished. . . .

CAL. PENAL CODE § 632(a). Section 637.2(a) of the California Penal Code permits a civil action against a person who violates the eavesdropping statute. *See* CAL. PENAL CODE at § 637.2(a). McAuley relied upon these code sections in arguing that his invasion of privacy claim should not be dismissed.

■ Recently, the California Supreme Court explained that "[t]o prove actionable intrusion, the plaintiff must show the defendant penetrated some zone of physical or sensory privacy surrounding, or obtained unwarranted access to data about, the plaintiff." *Shulman*, 18 Cal.4th at 232, 74 Cal.Rptr.2d 843, 955 P.2d 469. The nature of the intrusion may include "unwarranted sensory intrusions such as eavesdropping, wiretapping, and visual or photographic spying." *Id.* at 231, 74 Cal. Rptr.2d 843, 955 P.2d 469. But a claim for invasion of privacy can survive only if the plaintiff had an "objectively reasonable expectation of seclusion or solitude in the place, conversation, or data source." *Id.* at 232, 74 Cal.Rptr.2d 843, 955 P.2d 469.

■ "[A] person may reasonably expect privacy against the electronic recording of a communication, even though he or she had *no* reasonable expectation as to confidentiality of the communication's contents." *Sanders v. American Broad. Cos., Inc.*, 20 Cal.4th 907, 915, 85 Cal. Rptr.2d 909, 978 P.2d 67 (1999) (emphasis added). Moreover, although "one who imparts private information risks the betrayal of his confidence by the other party, a substantial distinction has been recognized between the secondhand repetition of the contents of a conversation and its simultaneous dissemination to an unannounced second auditor, whether that auditor be a person or a mechanical device." *Id.* (quotation marks omitted). "[S]uch secret monitoring denies the speaker an important aspect of privacy of communication— the right to control the nature and extent of firsthand dissemination of his statements." *Shulman*, 18 Cal.4th at 235, 74

Cal.Rptr.2d 843, 955 P.2d 469 (quotation marks omitted).

The complaint alleged that a NHK reporter preparing the Hour Long Program went to McAuley's home unexpectedly and when McAuley answered the door, began asking him questions. McAuley had not agreed to be interviewed in advance. During the interview, the reporter wore a hidden microphone on his necktie, and a camera operator and sound technician sat in a van parked on the street in front of McAuley's home. McAuley did not know that the interview was being recorded, and at no time during the interview did he consent to being recorded on audio or videotape.

■ In his complaint, McAuley did not allege that he did not know that he was speaking with a reporter. Nonetheless, even assuming that McAuley knew he was speaking with a reporter, he can still state a claim for invasion of privacy because "a person may reasonably expect privacy against the electronic recording of a communication, even though he or she had no reasonable expectation as to confidentiality of the communication's contents." *Sanders*, 20 Cal.4th at 915, 85 Cal.Rptr.2d 909, 978 P.2d 67. As to whether or not the intrusion was "highly offensive," there is no bright line rule; "each case must be taken on its facts." *Shulman*, 18 Cal.4th at 237, 74 Cal.Rptr.2d 843, 955 P.2d 469. Consequently, we conclude that McAuley did state a claim for invasion of privacy, and we reverse the court's dismissal of this claim.

### IV. Forum Non Conveniens

The district court granted NHK's motion to dismiss the defamation claims and the conversion claim on the ground of forum non conveniens. The court did not dismiss the privacy claim on this basis. Although the court had already dismissed the Hour Long Program defamation claim for lack of subject matter jurisdiction under the FSIA, the court also ruled that it should be dismissed for forum non conve-

niens. Because we agree that the defamation claim regarding the Hour Long Program was properly dismissed on other grounds, our analysis of forum non conveniens focuses solely on the remaining claims: the Morning Program defamation claim and the conversion claim.[2] We find that the district court's dismissal of these two claims for forum non conveniens was an abuse of discretion, and we reverse.

 A forum non conveniens determination is committed to the sound discretion of the district court. *See Gemini Capital Group, Inc. v. Yap Fishing Corp.,* 150 F.3d 1088, 1091 (9th Cir.1998). We reverse the district court's decision "only when there has been a clear abuse of discretion; where the court has considered *all* relevant public and private interest factors, and where its balancing of these factors is reasonable, its decision deserves substantial deference." *Creative Tech., Ltd. v. Aztech Sys. Pte. Ltd.,* 61 F.3d 696, 699 (9th Cir.1995) (emphasis added).

 A party moving in the trial court to dismiss on the grounds of forum non conveniens has the burden of showing that there is an adequate alternative forum, and that choice of law and the balance of private and public interest factors favor dismissal. *See Ceramic Corp. of America v. Inka Maritime Corp. Inc.,* 1 F.3d 947, 949 (9th Cir.1993). The moving party must make a showing sufficient to overcome the "great deference" due plaintiffs "because a showing of convenience by a party who has sued in his home forum will usually outweigh the inconvenience that the defendant may have shown." *Id.* (citations omitted).

**A. Adequate Alternative Forum**

 At the outset of any forum non conveniens inquiry, we must determine whether an adequate alternative forum exists. In dismissing Appellants' conversion claim, the court did not conduct any analysis to determine whether Japan is an adequate alternative forum. Rather, the court concluded that the "core of the case" is the Hour Long Broadcast and proceeded to analyze the adequacy of Japan as an alternative forum looking to the defamation claims only.

The court's determination that Japan is an adequate alternative forum even though Japan's civil procedure rules are not friendly to plaintiffs was not erroneous. The problem with the court's analysis and conclusion on this matter, however, is that the court shifted the burden from the defendant NHK to the plaintiffs. *See Contact Lumber Co. v. P.T. Moges Shipping Co., Ltd.,* 918 F.2d 1446, 1449 (9th Cir. 1990) (ruling that "the burden of proving an alternative forum is the defendant's and ... the remedy must be clear before the case [should] be dismissed") (citations omitted). Additionally, the court failed to explain what evidence it had that Japan was an adequate forum for the resolution of the defamation and conversion claims. Instead, the court simply relied upon this court's statement in *Lockman Found. v. Evangelical Alliance Mission,* 930 F.2d 764 (9th Cir.1991), that it could not find a single case in which Japan was held to be an inadequate forum. Thus, the basis for the court's conclusion that Japan is an adequate alternative forum was insufficient.

**B. Choice of Law Determination**

 Before dismissing a case for forum non conveniens, the district court must also make a choice of law determination. *See Contact Lumber,* 918 F.2d at 1449. "The burden is on the party seeking to invoke foreign law." *McGhee v. Arabian American Oil Co.,* 871 F.2d 1412,

---

**2.** Although we conclude that we lack subject matter jurisdiction over Alpha's conversion claim because Alpha did not demonstrate that the alleged conversion occurred in the United States, *see infra,* we review the district court's forum non conveniens determination because if Alpha later produces evidence that the conversion occurred in the United States, the district court may reinstate the conversion claim.

1422 (9th Cir.1989). "We review a district court's choice of law determination de novo." *Contact Lumber*, 918 F.2d at 1449. "In reviewing the factual findings that underlie the choice of law determination, this court must apply the clearly erroneous standard." *Id.*

### 1. Defamation for broadcast of the Morning Program

The district court focused on the Hour Long Program and ruled that in adjudicating the defamation claims, it would have to apply Japanese law "because of Japan's greater interest" in the subject matter of the broadcast. In making this ruling, the court cited the governmental interests test used in *Sommer*, 40 Cal.App.4th at 1467, 48 Cal.Rptr.2d 235. It is unclear why the court used this test for the defamation claims but used a different test for the conversion claim.

The court determined that Japan has a greater interest in the action because the Hour Long Program was broadcast in Japan, in Japanese, about a topic of interest to Japanese citizens. The court did not acknowledge the United States's interests in the action, such as protecting its citizens from defamation. Furthermore, the only case cited by the court, *Sommer v. Gabor*, did not bolster the court's ruling that the choice of law should be Japan for the reasons discussed above. *See Sommer*, 40 Cal.App.4th at 1468–70, 48 Cal.Rptr.2d 235 (ruling that trial court did not err in applying California law rather than German law in a defamation action where the defamatory statement was published in a German magazine). The court did not analyze choice of law specifically, in regard to the Morning Program, but rather concluded that because the defamation claims should be litigated together, the most fair and efficient approach would be to dismiss this claim on forum non conveniens grounds as well.

The Morning Program, unlike the Hour Long Program, was broadcast in the United States. The court therefore erred in failing to analyze whether Japan or the United States has a stronger interest in adjudicating the Morning Program claim. The only rationale offered by the court in dismissing this claim on forum non conveniens grounds was the desire to have the two defamation claims litigated together. Because we find that the Hour Long Program claim should be dismissed on other grounds (FSIA immunity), the advantage of a joint trial on both claims is an insufficient basis for the court's determination that Japanese law should be applied to the Morning Program claim. No other rationale has been provided. Consequently, we find that the court committed clear error in ruling that Japanese law applies.

### 2. Conversion Claim

The district court noted that the applicable law for the conversion claim would be the situs of the conversion. The court then stated that because the alleged conversion took place in Japan, the court would be required to apply Japanese law to resolve Alpha's conversion claim.

First, in simply looking to where the alleged conversion occurred, the court clearly applied the wrong standard. *See Sommer v. Gabor*, 40 Cal.App.4th 1455, 1467, 48 Cal.Rptr.2d 235 (1995). As noted in *Sommer*, the California Supreme Court has renounced the rule that the law of the place where the wrong occurred is the applicable law in tort actions regardless of the issues before the court. *See id.* (citing *Reich v. Purcell*, 67 Cal.2d 551, 63 Cal. Rptr. 31, 432 P.2d 727 (1967)). Rather, choice of law rules rest on an analysis of the respective interests of the states or countries involved—the "governmental interest" approach. *See Sommer*, 40 Cal. App.4th at 1467, 48 Cal.Rptr.2d 235. Here, the district court erred in not applying the governmental interest approach in determining what law would be applicable to the conversion claim.

Second, even *assuming arguendo* that the district court applied the correct stan-

dard, the evidence supporting the court's finding that the conversion occurred in Japan was very weak, consisting solely of an uncorroborated declaration by an agent of NHK. During the discovery process, Alpha sought information about how and where NHK obtained the Alpha Documents. But NHK refused to disclose this information, invoking the "reporter's privilege." In its order, the court did not specify what evidence it was relying upon in determining that the conversion occurred in Japan. Nor did NHK identify any evidence supporting its position that Japanese law is the proper law to apply. Because the court made the choice of law determination using the incorrect standard and by relying upon questionable evidence, the district court's finding that Japanese law applied was clearly erroneous.

### C. Private Interest Factors

■ In addition to considering choice of law and whether an adequate alternative forum exists, the court must also consider public and private interest factors to determine whether an action should be dismissed for forum non conveniens. *See Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1334 (9th Cir.1984). The private interest factors include: ease of access to sources of proof, availability of compulsory process of obtaining witnesses for trial, and expense and efficiency of litigating the case. *See id.*

The district court erred by approaching the private interest analysis as though the Appellants carried the burden, instead of NHK. The court simply explained why it did not consider the location of the witnesses and documents sufficient to retain the action in California. Even though Appellants did not have the burden, Appellants offered a number of reasons why the trial should remain in California—that numerous third-party witnesses are located in the United States, that witnesses cannot be compelled to testify in Japan, and that translating the 15,000 page Alpha Document into Japanese would be costly and difficult. The court offered reasons for rejecting these concerns; the court's reasons, however, were not persuasive.

Additionally, the court did not recognize or consider that both Alpha and McAuley are California residents. The Supreme Court has observed "that a plaintiff's choice of forum is entitled to greater deference when the plaintiff has chosen the home forum." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981). As we noted above, greater deference is due because "a real showing of convenience by a plaintiff who has sued in his home forum will normally outweigh the inconvenience the defendant may have shown." *Gates Learjet*, 743 F.2d at 1335 (quoting *Piper Aircraft*, 454 U.S. at 255 n. 23, 102 S.Ct. 252).

The court improperly placed the burden on Appellants, instead of deferring to their choice of forum. Furthermore, the court failed to state *any* private interest factors that weighed in favor of Japan. Finally, the court also failed to consider other factors that weighed in favor of Appellants and failed to conduct any balancing of these factors.

### D. Public Interest Factors

The court's analysis of public interest factors was also inadequate. The court ruled that Japan has a greater interest in determining whether NHK should be liable for defamatory statements made in the Hour Long Program. The court did not address what public interest factors applied to the conversion claim or the Morning Program defamation claim. Also, the court did not consider California's interest in the claims and did not properly balance the competing interests. Thus, court abused its discretion by failing to balance the relevant factors. *See Gates Learjet*, 743 F.2d at 1334 (holding that because the court did not balance important relevant factors, its dismissal for forum non conveniens was an abuse of discretion).

The district court erred in determining whether an adequate alternative forum ex-

ists, in its choice of law analysis, and its analysis of public and private interest factors. Accordingly, we conclude that the district court's dismissal for forum non conveniens was an abuse of discretion.[3]

### V. Conclusion

The court correctly determined that NHK is entitled to immunity under the FSIA. As a result, Appellants' Hour Long Program defamation claim is barred. Also, the court correctly determined that the FSIA does not bar the Morning Program defamation claim because it constitutes "commercial activity."

The court improperly ruled that the FSIA does not bar Alpha's conversion claim because the claim falls within the "tortious activity" exception. In addition, the court improperly dismissed Appellant McAuley's invasion of privacy claim for failure to state a claim. Moreover, the court's errors in dismissing the conversion claim and the Morning Program defamation claim for forum non conveniens constitute an abuse of discretion.

Accordingly, we affirm the court's dismissal of the Hour Long Program defamation claim. We reverse the court's dismissal of McAuley's invasion of privacy claim, we reverse the court's ruling that the "tortious activity" exception applies to Alpha's conversion claim, and we reverse the court's dismissal of the Morning Program defamation claim for forum non conveniens.

AFFIRMED in part, REVERSED and REMANDED in part.

Each side shall bear its own costs.

---

3. The district court did not analyze McAuley's invasion of privacy claim because it determined that the privacy claim should be dismissed on other grounds. As noted *infra*, however, we reverse the court's dismissal of that claim. We note that for purposes of forum non conveniens, the same considerations (adequate alternative forum, choice of law, private and public interest factors) apply to the invasion of privacy claim. Here, it is clear that California law governs the invasion of privacy claim and that the alleged invasion of privacy occurred in California. The existence of this claim is an additional reason for resolving the other causes of action in the United States as well.