# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 98-3440

_____

| | | |
|---|---|---|
| In re: Michael S. Rose; | * | |
| In re: Jennifer R. Rose; | * | |
| | * | |
| Debtors. | * | |
| | * | |
| _____ | * | |
| | * | |
| Jennifer R. Rose, | * | |
| | * | |
| Plaintiff-Appellee, | * | |
| | * | |
| v. | * | |
| | * | |
| U.S. Department of Education; | * | Appeal from the United States |
| Coordinating Board of | * | District Court for the |
| Higher Education, | * | Western District of Missouri. |
| | * | |
| Defendants, | * | |
| | * | |
| Missouri Student Loan Program, | * | |
| | * | |
| Defendant -- Appellant, | * | |
| | * | |
| University of Missouri; Illinois | * | |
| Guarantors Student Assistance; | * | |
| Nebraska Student Loan Program; | * | |
| North Star Guarantee; United Student | * | |
| Aid Funds, Inc., | * | |
| | * | |
| Defendants. | * | |
| | * | |

_____

```
                                          *
Business Bankruptcy Law Committee,        *
New York County Lawyers'                  *
Association,                              *
                                          *
        Amicus on Behalf of Appellee.     *
```

_____

Submitted:  May 12, 1999

Filed:  August 9, 1999

_____

Before BEAM, FLOYD R. GIBSON, and MURPHY, Circuit Judges.

_____

MURPHY, Circuit Judge.

This case involves student loans which Jennifer Rose and her husband Michael sought to discharge in a Chapter 7 bankruptcy proceeding.  Both the bankruptcy court[1] and the district court[2] on appeal ruled that the Missouri Student Loan Program (MSLP) had waived the right to claim sovereign immunity through the filing of proofs of claim to recover on some of the loans.  The bankruptcy court also ruled that Rose's loans were dischargeable under 11 U.S.C. § 523(a)(8) because of undue hardship, and the district court remanded that issue for further consideration.  Now before this court is MSLP's interlocutory appeal on the issue of sovereign immunity.

Jennifer Rose received her law degree in 1995 from the University of Missouri-Kansas City.  Rose was unemployed for almost a year after her graduation and then

_____

[1]The Honorable Frank W. Koger, Chief Bankruptcy Judge, United States Bankruptcy Court for the Western District of Missouri.

[2]The Honorable Ortrie D. Smith, United States District Judge for the Western District of Missouri.

2

took a position as a law clerk for a Missouri judge for a year. Jennifer and Michael Rose have two children; Michael cares for them and is not otherwise employed. Jennifer funded both her undergraduate and law school educations with loans. The Roses found it difficult to repay the loans, and they filed for bankruptcy under Chapter 7 in 1997.

The Missouri Higher Education Loan Authority and Sallie Mae held rights to repayment on some of the student loans, and they filed proofs of claim with the bankruptcy court. These loans had been guaranteed by MSLP, which is a state program administered through the Missouri Coordinating Board for Higher Education, a state agency. The guarantee agreement provided that MSLP would purchase the loans from the lenders after they filed proofs of claim. After MSLP purchased the loans, the Missouri Higher Education Loan Authority and Sallie Mae filed transfers of claim requesting the bankruptcy court to transfer their rights to MSLP. Shortly after the Roses filed their bankruptcy petition, Jennifer initiated an adversary proceeding against MSLP and seven other lenders and guarantee agencies–seeking a declaration that her student loans were dischargeable on the grounds of undue hardship. MSLP filed an answer, began discovery, and prepared for a hearing on the discharge issues.

Immediately prior to the dischargeability hearing, one of Rose's other student loan creditors filed a motion to dismiss based on Eleventh Amendment immunity. At the end of the hearing another state creditor requested permission to brief its own position on immunity, and later MSLP also moved to dismiss. The creditors challenged the constitutionality of provisions in the bankruptcy code purporting to abrogate sovereign immunity and to establish conditions for waiver. See 11 U.S.C. § 106 (a), (b).[3] The bankruptcy court dismissed the University of Missouri-Kansas City on

---

[3]The relevant portions of § 106 read:

> (a) Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the

Eleventh Amendment grounds because it had not filed a proof of claim and because the court viewed § 106(a) to be an unconstitutional attempt to abrogate sovereign

---

extent set forth in this section with respect to the following:

(1) [Listing many individual sections of the code]

(2) The court may hear and determine any issue arising with respect to the application of such sections to governmental units.

(3) The court may issue against a governmental unit an order, process, or judgment under such sections or the Federal Rules of Bankruptcy Procedure, including an order or judgment awarding a money recovery, but not including an award of punitive damages. Such order or judgment for costs or fees under this title or the Federal Rules of Bankruptcy Procedure against any governmental unit shall be consistent with the provisions and limitations of section 2412(d)(2)(A) of title 28.

(4) The enforcement of any such order, process, or judgment against any governmental unit shall be consistent with appropriate nonbankruptcy law applicable to such governmental unit and, in the case of a money judgment against the United States, shall be paid as if it is a judgment rendered by a district court of the United States.

(5) Nothing in this section shall create any substantive claim for relief or cause of action not otherwise existing under this title, the Federal Rules of Bankruptcy Procedure, or nonbankruptcy law.

(b) A governmental unit that has filed a proof of claim in the case is deemed to have waived sovereign immunity with respect to a claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which the claim of such governmental unit arose.

immunity.[4]  The bankruptcy court found, however, that MSLP had waived its Eleventh Amendment immunity as a matter of common law by the filing of proofs of claim in the Roses' bankruptcy proceeding, and it denied its motion to dismiss.  The court then found that Rose's circumstances qualified as undue hardship and declared her student loans dischargeable under 11 U.S.C. § 523(a)(8).

Appeals were taken to the district court by the lenders and guarantee agencies to contest the hardship determination, and MSLP also appealed the ruling that it had waived its sovereign immunity.  The district court affirmed the ultimate rulings on sovereign immunity, but remanded the undue hardship issues for further consideration.  The district court agreed with the bankruptcy court that 11 U.S.C. § 106(a) is an unconstitutional attempt to abrogate sovereign immunity, but it disagreed about the § 106(b) waiver provision which it upheld, and under which it concluded that MSLP had waived its immunity by filing a claim.

MSLP appeals, arguing that its submission of claims in the bankruptcy action did not waive its immunity in the discharge proceeding.  We review de novo the district court's denial of a motion to dismiss based on Eleventh Amendment immunity.   See Thomas v. FAG Bearings Corp., 50 F.3d 502, 504 (8th Cir. 1995).

The Eleventh Amendment can bar federal actions by private parties against a state unless it has waived its immunity or Congress has abrogated it in a valid exercise of power under the enforcement clause of the Fourteenth Amendment.  See Florida Prepaid Postsecondary Educ. Expense Bd. v. College Sav. Bank (College Savings Bank I), 119 S. Ct. 2199, 2204-05 (1999); Seminole Tribe v. Florida, 517 U.S. 44, 72-73 (1996); cf. Ex parte Young, 209 U.S. 123 (1908) (authorizing suits for declaratory and injunctive relief against state officers in their individual capacities).  The full reach of the Eleventh Amendment may not yet be clear, but its force has been shown in several cases during the last Supreme Court term.  See Alden v. Maine, 119 S. Ct. 2240 (1999)

---

[4]Rose did not attempt to appeal the dismissal of the university.

(allowing state to claim sovereign immunity in its courts for private actions under Fair Labor Standards Act); College Savings Bank I, 119 S. Ct. 2199 (finding no federal jurisdiction for patent infringement claim against state agency); Florida Prepaid Postsecondary Educ. Expense Bd. v. College Sav. Bank (College Savings Bank II), 119 S. Ct. 2219 (1999) (finding no federal jurisdiction for alleged violations of the Lanham Act by state agency).

The case before this court does not present a general question of Eleventh Amendment immunity, however, for waiver has long been a factor in bankruptcy proceedings. There is a well-established common law rule that submission of a proof of claim by a state is sufficient to "waive any immunity which it otherwise might have had respecting the adjudication of the claim." Gardner v. New Jersey, 329 U.S. 565, 574 (1946) (bankruptcy court could entertain a trustee's objections to a claim filed by the state despite its assertion of sovereign immunity); see also Burke v. Georgia Dep't of Revenue (In re Burke), 146 F.3d 1313, 1319-20 (11th Cir. 1998) (applying Gardner to hold that state's filing of proofs of claim rendered it subject to liability for violation of automatic stay and enforcement of discharge injunction), cert. denied, 119 S. Ct. 2410 (1999). In June the Supreme Court reaffirmed Gardner's validity in College Savings Bank II, 119 S. Ct. 2219, a case involving the Lanham Act. The Court commented that Gardner "stands for the unremarkable proposition that a State waives its sovereign immunity by voluntarily invoking the jurisdiction of the federal courts." College Savings Bank II, 119 S. Ct. at 2228 n.3.

MSLP points out that educational loans sponsored by the government are generally exempt from discharge in bankruptcy. See 11 U.S.C. § 523 (a)(8). Other debts of a Chapter 7 petitioner may be discharged under 11 U.S.C. § 727 regardless of whether proofs of claims have been filed, but the filing of proofs of claims on ordinary debts triggers an adjudication process to determine the validity, amount, and priority of the claims, and the bankruptcy court considers any objections after notice and hearing. See 11 U.S.C. § 502(a), (b). Section 523 exempts certain debts, including educational debt, from a general discharge; such debts may only be discharged upon

6

a finding that otherwise there would be "undue hardship on the debtor and the debtor's dependents."[5]  11 U.S.C. § 523(a).  In order to discharge student loan debt, the debtor must initiate a separate action to prove undue hardship.  Fed. R. Bankr. P. 4007, 7001.

MSLP contends that the Roses' bankruptcy filing and Jennifer's discharge proceeding are separate cases for immunity purposes, but the bankruptcy case and the adversary proceeding on dischargeability are interrelated.  Disputes arising out of the adjudication of a single debt may be sufficiently intertwined so that a waiver in one aspect applies to the others as well.  See Price v. United States (In Re Price), 42 F.3d 1068, 1073 (7th Cir. 1994) ("The basis of both claims [tax liability and stay violation] revolve around the same aggregate core of facts -- the debtors' unpaid taxes.").  The bankruptcy court's claim adjudication and discharge processes were both related to the scope and status of MSLP's claim against the Roses' bankruptcy estate.[6]  The text of the bankruptcy code makes clear that these procedures are both part of a larger whole;

_____

[5]The relevant portions of the code provides that a general discharge "does not discharge an individual debtor from any debt . . . for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless . . . excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents." 11 U.S.C. § 523 (1994).  (This provision was amended in 1998, but those amendments do not affect this case filed before October 7, 1998, and the relevant language remains unaltered.)

[6]MSLP concedes that it and the lenders for which it gave its guarantee had the authority to file proofs of claims, but it argues that none had authority to waive sovereign immunity in Rose's separate discharge suit.  Because the filing of the proofs of claims was adequate to waive immunity in related proceedings adjudicating the dischargeability of the debts claimed, we find this argument to be without merit.  On appeal MSLP no longer argues that filings by the other entities cannot amount to waiver by it or that it itself is unable to waive the state's sovereign immunity in discharge proceedings.

the same section that exempts educational debt from a general discharge establishes the ground of undue hardship as the exception to the exemption. By pressing its claim on the bankruptcy estate, MSLP seeks to gain the benefit of the exemption from discharge without subjecting itself to its limitations. After studying the record we agree with the bankruptcy court's conclusion that MSLP's submission of proofs of claims in Roses' bankruptcy case waived its immunity in related proceedings required to adjudicate the dischargeability of those claims.[7]

In this case we are faced with a narrow issue. We decide only that MSLP has waived its Eleventh Amendment immunity on this record. We therefore need not reach issues of the constitutionality of the abrogation provision of § 106(a) and the statutory waiver provision of § 106(b).[8] MSLP's invocation of the authority of the

_____

[7]The filing of proofs of claims was sufficient to establish federal jurisdiction in this case, but MSLP's active participation in the dischargeability proceedings and belated assertion of sovereign immunity are other factors which might have been relevant to the issue of waiver. See Hill v. Blind Indus. and Servs., 1999 WL 356056, at *5-*6 (9th Cir. June 4, 1999) (Eleventh Amendment defense waived where not raised until opening day of trial).

[8]We note in passing, however, that bankruptcy has long been considered a special area of the law, and the Supreme Court's June 1999 rulings on sovereign immunity have not resolved how far Congressional power extends in the bankruptcy context. Federal jurisdiction over a bankruptcy estate differs from jurisdiction over a party to litigation. "A federal court's jurisdiction over the dischargeability of debt . . . 'derives not from jurisdiction over the state or other creditors, but rather from jurisdiction over debtors and their estates.'" Virginia ex rel. Norfolk v. Collins (In re: Collins), 173 F.3d 924, 929 (4th Cir. 1999) (citation omitted). The Supreme Court has distinguished the adjudication of a bankruptcy estate in which a state claims an interest from an ordinary suit against a state:

> It is traditional bankruptcy law that he who invokes the aid of the bankruptcy court by offering a proof of claim and demanding its allowance must abide by the consequences of that procedure. If the claimant is a State, the procedure of proof and allowance is not

8

bankruptcy court waived sovereign immunity in regard to the claims for which it filed proofs. We affirm the denial of its motion to dismiss and remand for further proceedings on whether Rose's student loan debts are dischargeable.

A true copy.


Attest:


CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

transmuted into a suit against the State because the court entertains objections to the claim. The State is seeking something from the debtor. No judgment is sought against the State. The whole process of proof, allowance, and distribution is, shortly speaking, an adjudication of interests claimed in a *res.*

Gardner, 329 U.S. at 573-74 (citation omitted). Requirements of a workable bankruptcy system may also be seen to favor a centralized system. The Court has long recognized "orderly and expeditious proceedings" as a "fundamental purpose of the Bankruptcy Act," and the fragmentation of proceedings necessary to settle claims against a bankruptcy estate disserves that purpose. Id. at 574 (citation and internal quotations omitted).