In re Deborah Jane SEAY, Debtor.

Deborah Jane Seay, Plaintiff,

v.

Tennessee Student Assistance Corporation, Defendant.

Bankruptcy No. 98–11839.
Adversary No. 99–1216.

United States Bankruptcy Court,
E.D. Tennessee,
Southern Division.

Jan. 19, 2000.

**114**

Mark T. Young, Mark T. Young & Associates, Hixson, TN, for the Debtor.

Paul G. Summers, Attorney General and Reporter, State of Tennessee, Charlotte E. Keeton, Assistant Attorney General, TN Attorney General's Office, Bankr. Unit, Nashville, TN, for TSAC.

*MEMORANDUM*

JOHN C. COOK, Bankruptcy Judge.

This adversary proceeding is before the court on the defendant's motion to dismiss for lack of jurisdiction. The debtor, Deborah Jane Seay, has filed a complaint against the defendant, the Tennessee Student Assistance Corporation ("TSAC"), seeking a determination that her student loans should be discharged pursuant to the undue hardship exception in 11 U.S.C. § 523(a)(8). TSAC has responded with a motion to dismiss, alleging that it is an arm of the state of Tennessee, that Tennessee has not consented to this lawsuit, and that therefore the Eleventh Amendment to the United States Constitution [1] requires dismissal of the debtor's action.

TSAC is a governmental corporation created by the statutes of Tennessee for the purpose of facilitating student loans in the state. As such it is an arm or agency of the state of Tennessee [2] and is clothed with the sovereign immunity guaranteed to the states by the Eleventh Amendment. It filed a proof of claim in the debtor's original Chapter 13 for four student loans in the amount of $13,800.88, and the debtor then converted her case to a Chapter 7 case (no assets) wherein the court eventually entered its general discharge order.

In its motion to dismiss, TSAC argues that the Bankruptcy Code provisions that purport to give the court jurisdiction over a state in these circumstances, 11 U.S.C § 106(a), (b), are unconstitutional because Congress lacked the constitutional authority to enact them. It also argues that it did nothing to waive the state's sovereign immunity, which, being still intact, requires the dismissal of the debtor's lawsuit. The

---

1. "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Supreme Court has held that the prohibition includes suits by citizens of a state against that state. *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 54, 116 S.Ct. 1114,

134 L.Ed.2d 252 (1996); *Hans v. Louisiana,* 134 U.S. 1, 11–14, 10 S.Ct. 504, 33 L.Ed. 842 (1890).

2. The statutes creating and enabling TSAC show this to be true, and the debtor does not contest its status. Tenn.Code Ann. §§ 49–4–201 to –212; 49–4–401 to –508.

debtor, apparently cognizant of the many recent cases declaring 11 U.S.C. § 106(a) unconstitutional, does not argue that the state's sovereign immunity has been abrogated by § 106(a) or even that it has been waived under the provisions of 11 U.S.C. § 106(b). Instead, she takes the position that the state has expressly waived its sovereign immunity by statute, i.e., Tenn. Code Ann. § 49-4-503. No evidence has been offered by either party, and accordingly the court will decide this matter on the briefs and its understanding of the law.

 Since the question of a court's jurisdiction may be raised by a party at any time or stage in a case, a trial court to which a suggestion of lack of jurisdiction has been made should give plenary consideration to the question, going beyond the contentions of the parties if necessary to a full resolution of the issue. After a review of the recent decisions on the subject of sovereign immunity the court concludes that the Eleventh Amendment precludes it from exercising jurisdiction over TSAC.

## I.

Congress sought to obtain bankruptcy jurisdiction over the states by abrogating their sovereign immunity in 11 U.S.C. § 106(a) and by prescribing the conditions under which a waiver of that immunity would occur in 11 U.S.C. § 106(b). The attempt to abrogate sovereign immunity in § 106(a)[3] has failed, however, for quite recently, in *College Savings Bank v. Florida Prepaid Postsecondary Education Expense Board*, 527 U.S. 666, 119 S.Ct. 2219,

144 L.Ed.2d 605 (1999), a non-bankruptcy case turning on the question of state sovereign immunity, the Supreme Court observed:

> While this immunity from suit is not absolute, we have recognized only two circumstances in which an individual may sue a State. First, Congress may authorize such a suit in the exercise of its power to enforce the Fourteenth Amendment—an Amendment enacted after the Eleventh Amendment and specifically designed to alter the federal-state balance. Second, a State may waive its sovereign immunity by consenting to suit.

119 S.Ct. at 2223 (citations omitted). In a companion case, *Florida Prepaid Postsecondary Education Expense Board v. College Savings Bank*, 527 U.S. 627, 119 S.Ct. 2199, 144 L.Ed.2d 575 (1999), the Supreme Court went on to state that "*Seminole Tribe*[4] makes clear that Congress may not abrogate state sovereign immunity pursuant to its Article I powers...." 119 S.Ct. at 2205. Since Congress' bankruptcy powers emanate from Article I of the Constitution, it now seems certain that 11 U.S.C. § 106(a) is unconstitutional and thus void.

 In a recent and comprehensive opinion dealing with the constitutionality of § 106(a), the United States Bankruptcy Court for the Northern District of Ohio reviewed all the authorities[5] and held that an adversary action to determine dischargeability was a suit for the purposes of

---

3. "(a) Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to the following:
 (1) Sections ... 523 ....
 (2) The court may hear and determine any issue arising with respect to the application of such sections to governmental units." 11 U.S.C. § 106(a)

4. *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996).

5. The bankruptcy court apparently did not have the benefit of the Supreme Court's two June 1999 cases, *Florida Prepaid Postsecondary Education Expense Board v. College Savings Bank,* 527 U.S. 627, 119 S.Ct. 2199, 144 L.Ed.2d 575 (1999), and *College Savings Bank v. Florida Prepaid Postsecondary Education Expense Board,* 527 U.S. 666, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999). Those cases strongly reinforce the bankruptcy court's decision.

the Eleventh Amendment,[6] that Congress' bankruptcy powers granted in Article I, Section 8, do not confer on Congress the power to abrogate a state's Eleventh Amendment rights, and that the Fourteenth Amendment to the United States Constitution similarly affords no basis for congressional abrogation of the Eleventh Amendment. *Pitts v. Ohio Dep't of Taxation (In re Pitts),* 241 B.R. 862 (Bankr. N.D.Ohio 1999). This court agrees with the reasoning and the holding in *In re Pitts,* and rather than replowing that same ground it will simply adopt Chief Judge Speer's opinion insofar as it finds 11 U.S.C. § 106(a) to be beyond Congress' constitutional powers.

## II.

If Section 106(a) of the Bankruptcy Code will not serve to subject the state of Tennessee to this court's jurisdiction, what of § 106(b)? It provides:

> (b)A governmental unit that has filed a proof of claim in the case is deemed to have waived sovereign immunity with respect to a claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which the claim of such governmental unit arose.

11 U.S.C. § 106(b).

■■■ TSAC has indeed filed a proof of claim in this case, but even so, and even assuming arguendo that 11 U.S.C. § 106(b) is constitutional,[7] it seems clear that the subsection does not apply in this case because the filing of a proof of claim only waives sovereign immunity (1) with respect to a claim against a governmental unit, (2) that is property of the estate, and (3) that arose out of the same transaction or occurrence out of which the claim of the governmental unit arose. None of those

three prerequisites to waiver is present in this action.

First, the debtor's suit to establish the dischargeability of her student loans is not a "claim" as defined in 11 U.S.C. § 101(5) which states that a claim means:

> (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
>
> (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C. § 101(5). The debtor does not have a claim against the governmental unit in this case because she asserts no "right to payment" when she asks that her student loan debts be discharged, *see Epps v. Lomas Mortgage USA, Inc. (In re Epps),* 110 B.R. 691, 696–97 (E.D.Pa.1990), nor does she assert a "right to an equitable remedy for breach of performance," for nowhere is it alleged that TSAC has breached any duty of performance.

Even if the debtor's suit could be considered a claim as defined in § 105(5), however, it is clear that it does not constitute an interest in property such as could be "property of the estate." Instead, debtor's claim is a personal one belonging to her individually and following her[8] beyond bankruptcy.

Finally, even if the debtor's lawsuit could be construed to be a claim, and even if the claim could be considered a property of her estate, § 106(b) would still be inapplicable because the claim would not arise from the same transaction or occurrence

---

6. See also 1 Ronald D. Rotunda & John E. Nowak, *Treatise On Constitutional Law* § 2.12 (3d ed.1999).

7. The Fourth Circuit seems to hold it unconstitutional in *Schlossberg v. Maryland (In re*

*Creative Goldsmiths of Washington, D.C., Inc.),* 119 F.3d 1140, 1147 (4th Cir.1997).

8. See infra, Part IV.

out of which TSAC's claim arose. This "same transaction or occurrence" language mirrors the compulsory counterclaim language found in Fed. R. Bankr.P. 7013, which essentially defines a compulsory counterclaim as one arising "out of the transaction or occurrence that is the subject matter of the opposing party's claim. . . ." The Sixth Circuit's test for determining whether a counterclaim is a compulsory counterclaim is to "determine whether the issues of law and fact raised by the claims are largely the same and whether substantially the same evidence would support or refute both claims." *Sanders v. First Nat'l Bank & Trust Co.,* 936 F.2d 273, 277 (6th Cir.1991). Upon application of that test to the circumstances before the court, it is apparent that the issues of law and fact raised by the two claims are quite dissimilar. The facts and law pertinent to TSAC's claim have to do with the debtor's liability on one or more notes. The facts and law pertinent to the debtor's claim have to do with the level of her current financial distress. Moreover, the evidence to support or refute both claims is not the same. The debtor's evidence that *paying* the claim would impose an undue hardship on her has nothing to do with TSAC's evidence that she validly executed the notes it holds. For all these reasons, § 106(b) is not applicable to this case, and the court need not consider its constitutionality.

### III.

■ Beyond the statutory waiver established in 11 U.S.C. § 106(b), courts recognize a common law rule of waiver to the effect that "a State waives its sovereign immunity by voluntarily invoking the jurisdiction of the federal courts." *College Savings Bank v. Florida Prepaid Postsecondary Education Expense Board,* 527 U.S. 666, 119 S.Ct. 2219, 2228 n. 3, 144 L.Ed.2d 605 (1999). Although the debtor does not rely on it, a recent case from the Eighth Circuit purported to follow the common law rule and held that the filing of a proof of claim by an agency of a state

waived the state's sovereign immunity with respect to an adversary action brought by the debtor to determine whether his student loan debt was dischargeable by reason of undue hardship. *Rose v. U.S. Dep't of Educ. (In re Rose),* 187 F.3d 926 (8th Cir.1999). Relying primarily on the Supreme Court's decision in *Gardner v. New Jersey,* 329 U.S. 565, 67 S.Ct. 467, 91 L.Ed. 504 (1947), the court held that the claim adjudication process, which the state voluntarily entered into by filing its proof of claim, and the dischargeability process, which the debtor initiated by filing suit against the state, were interrelated enough for the filing of the proof of claim to be considered as a waiver of sovereign immunity as to the dischargeability action.

> MSLP contends that the Roses' bankruptcy filing and Jennifer's discharge proceeding are separate cases for immunity purposes, but the bankruptcy case and the adversary proceeding on dischargeability are interrelated. Disputes arising out of the adjudication of a single debt may be sufficiently intertwined so that a waiver in one aspect applies to the others as well. The bankruptcy court's claim adjudication and discharge processes were both related to the scope and status of MSLP's claim against the Roses' bankruptcy estate. The text of the bankruptcy code makes clear that these procedures are both part of a larger whole; the same section that exempts educational debt from a general discharge establishes the ground of undue hardship as the exception to the exemption. By pressing its claim on the bankruptcy estate, MSLP seeks to gain the benefit of the exemption from discharge without subjecting itself to its limitations.

*In re Rose,* 187 F.3d at 929–30 (citation omitted).

This court respectfully disagrees with *Rose* insofar as it holds that dischargeability litigation and the claims allowance process are "sufficiently intertwined" to treat

the filing of a proof of claim as a waiver of immunity to a dischargeability action. Procedurally, of course, claims are allowed unless objected to, and objections are handled as contested matters under Fed. R. Bankr.P. 9014. Dischargeability actions, on the other hand, require the full formalities of a lawsuit and are adversary proceedings as defined in Fed. R. Bankr.P. 7001. An objection to a claim is not a suit against the state, but an adversary action most certainly is.

The substantive differences between the two processes, however, are even more distinct. The claims allowance process deals exclusively with claims against the debtor's *estate*. Claims are not filed against the debtor personally, and only the estate is liable for the claim in bankruptcy. In the claims allowance process, the question to be answered is whether and to what extent the bankruptcy estate is liable for the claim.

By contrast, dischargeability litigation is in essence a declaratory judgment action against a creditor seeking to foreclose that creditor from collecting its debt *personally* from the debtor, that is, out of the debtor's personal postpetition assets once the bankruptcy case is ended. It seeks to determine the personal liability of the debtor outside bankruptcy, whereas the claims allowance process is merely an attempt to participate in the debtor's bankruptcy estate, a res in which the debtor commonly has no interest whatever. *Kieffer v. Riske (In re Kieffer–Mickes, Inc.)*, 226 B.R. 204, 208–09 (8th Cir. BAP 1998) ("Typically, a Debtor has no standing to object to claims ... because the debtor has no pecuniary interest in the distribution of the assets of the estate."); *Caserta v. Tobin*, 175 B.R. 773, 774–75 (S.D.Fla.1994) ("[Debtor's] interest in a discharge is not affected by the allowance or disallowance of claims.") This court, therefore, believes that the court in *Rose* was mistaken when it stated, "The bankruptcy court's claim adjudication and discharge processes were both related to the scope and status of MSLP's claim

*against the bankruptcy estate.*" *In re Rose*, 187 F.3d at 930 (emphasis added). The discharge process actually had nothing to do with the estate.

This court also believes the *Rose* court to be mistaken in asserting that "[b]y pressing its claim on the bankruptcy estate, MSLP seeks to *gain the benefit of the exemption* from discharge without subjecting itself to its limitations." *Id.* at 930 (emphasis added). In filing its proof of claim in that case, the state did not seek to gain the benefit of any exemption from discharge because it already had that benefit under the provisions of 11 U.S.C. § 523(a)(8). The debt would remain nondischargeable until such time as the debtor established undue hardship, and this would be so whether the creditor in *Rose* ever filed a claim or not. Nondischargeability is the "default" situation for student loan debts. Thus the creditor, merely by pressing its claim against the estate, did *not* seek to gain the benefit of the exemption in § 523(a)(8), and the *Rose* court's fairness rationale does not bear scrutiny.

Finally, the operative language of *Gardner v. New Jersey*, on which the *Rose* court heavily relied, cannot really be read to say any more than that the filing of a proof of claim by a state waives its sovereign immunity as to matters connected with the claims allowance process.

It is traditional bankruptcy law that he who invokes the aid of the bankruptcy court by offering a proof of claim and demanding its *allowance* must abide the consequences of *that procedure*. If the claimant is a State, the *procedure of proof and allowance is not transmitted into a suit* against the State because the court entertains *objections to the claim*. The State is seeking something from the debtor. *No judgment is sought* against the State. The whole process of proof, allowance, and distribution is, shortly speaking, an adjudication of interests *claimed in a res*. It is nonetheless such because the claim is rejected in toto, reduced in part, given a priority inferior

to that claimed, or satisfied in some way other than payment in cash. When the State becomes the actor and *files a claim against the fund* it waives any immunity which it otherwise might have had respecting *the adjudication of the claim.*

*Gardner v. New Jersey,* 329 U.S. 565, 573–74, 67 S.Ct. 467, 91 L.Ed. 504 (1947) (citations omitted) (emphasis added). The Court's language makes it clear that it considered the filing of a proof of claim to waive sovereign immunity only as to the claims allowance process. It distinguished situations in which a judgment was sought against the state. Thus, *Gardner* really furnishes no direct support for the decision in *Rose.*

■ One last consideration convinces this court that *Rose* is mistaken. Waivers of sovereign immunity should not be accidental, and the Supreme Court accordingly takes a narrow view of alleged waivers.

> We have long recognized that a State's sovereign immunity is "a personal privilege which it may waive at pleasure." *Clark v. Barnard,* 108 U.S. at 447, 2 S.Ct. 878, [27 L.Ed. 780]. The decision to waive that immunity, however, "is altogether voluntary on the part of the sovereignty." *Beers v. Arkansas,* 20 How. 527, 529, 15 L.Ed. 991 (1858) Accordingly, our "test for determining whether a State has waived its immunity from federal-court jurisdiction is a stringent one." *Atascadero State Hospital v. Scanlon,* 473 U.S. 234, 241, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985).

*College Savings Bank v. Florida Prepaid Postsecondary Education Expense Board,* 527 U.S. 666, 119 S.Ct. 2219, 2226, 144 L.Ed.2d 605 (1999). The Supreme Court goes on to cite its earlier cases in which it held that a "clear declaration" of a state's intention to submit to federal jurisdiction is required and that a state's consent to suit must be "unequivocally expressed." *Id.* With such stern tests to be met, it seems doubtful that a state should be held to have blundered into a waiver of its

immunity by having failed to appreciate the questionable unity of two bankruptcy processes that are procedurally and substantively quite separate.

Considering the distinctness of the two bankruptcy processes in question, and further considering the legal dignity accorded to sovereignty and demonstrated by constitutional protection, it seems improbable to this court that a state's conscious decision to engage in the claims. allowance process should trigger the complete capture of a state for all purposes of the Bankruptcy Code. Accordingly, the court holds that the filing of the proof of claim by TSAC did not waive Tennessee's sovereign immunity to the dischargeability action brought against it by the debtor.

## IV.

■ The debtor's brief response to TSAC's motion to dismiss suggests that Tennessee has expressly waived its sovereign immunity and offers a recent case, *Innes v. Kansas State University (In re Innes),* 184 F.3d 1275 (10th Cir.1999), to support her position. In *Innes,* the Tenth Circuit held that Kansas State University waived its Eleventh Amendment immunity—and thus submitted to bankruptcy jurisdiction for the purposes of an adversary proceeding to determine undue hardship—when the university entered into a student loan participant contract that explicitly required it "to perform the functions and activities set forth in 34 C.F.R. [§ ]674." *Id.* at 1282. That regulation, while rather general, requires an educational institution to honor a bankruptcy court's stay, to file a proof of claim in cases with assets, and to follow certain other enumerated procedures if properly served with a student loan dischargeability complaint under the Bankruptcy Code. The Tenth Circuit found that Kansas had expressly waived its immunity.

> Because the contract explicitly states that KSU agrees to perform the obligations imposed by 34 C.F.R. § 674, we agree with the district court that by

including this particular regulation in the contract KSU necessarily consented to perform certain functions in the federal bankruptcy court pursuant to § 674.49. The inclusion of this federal regulation in the contract so clearly binds KSU to suit in federal bankruptcy court that if the contract were enacted into legislation it would undoubtedly satisfy *Edelman's* waiver test. To conclude that KSU intended anything other than a waiver would defy logic, contract law, and the equitable principles of bankruptcy. Indeed, we do not think it either reasonable or possible to read the agreement and corresponding regulation, along with the authorizing Kansas legislation, to conclude that KSU intended anything other than a waiver.

*Id.* at 1282.

*Innes* thus involved a case in which a university, as the lending institution, entered into a contract with the United States Department of Education that specifically required the university to abide by a federal regulation. The case is distinguishable because there is no evidence in this proceeding that either Tennessee or TSAC entered into any contract whatsoever with the United States Department of Education or that either agreed to abide by 34 C.F.R. § 674.

The debtor also points to Tenn.Code Ann. § 49–4–503 as a possible express waiver because that statute requires someone to agree to abide by all applicable state and federal regulations governing the guaranteed student loan program. The statute provides:

Before making such advances, the Tennessee student assistance corporation shall require each *eligible institution* to enter into a written agreement stating that *it* will make loans under the provisions of the guaranteed student loan program or the auxiliary loans to assist students program, and that *it* will abide by all applicable state and federal regulations governing the guaranteed student loan program or the auxiliary loans

to assist students program, in the same manner as participating commercial lenders.

Tenn.Code Ann. § 49–4–503 (emphasis added). This law requires eligible institutions to enter into agreements with TSAC in which *they* promise to abide by all applicable state and federal regulations, not TSAC. Thus TSAC is not required by the statute to abide by federal regulations, and there is no evidence that it ever agreed by contract or otherwise to do so. Accordingly there is no showing of an express waiver of sovereign immunity by Tennessee or TSAC.

■ Although the court holds that a debtor may not sue an unconsenting state to determine dischargeability of a student loan for undue hardship, the debtor is not without her remedies. Although her debt will perforce remain nondischargeable in bankruptcy, she may assert undue hardship as an affirmative defense to any attempt by the state to collect its debt post-bankruptcy, for the courts have uniformly held that state courts have concurrent jurisdiction with federal courts over dischargeability determinations involving student loans. *Resolution Trust Corp. v. McKendry (In re McKendry)*, 40 F.3d 331, 335 n. 3 (10th Cir.1994); *Kahl v. Texas Higher Educ. Coordinating Bd. (In re Kahl)*, 240 B.R. 524, 530 (Bankr.E.D.Pa. 1999); *Perkins v. Coordinating Bd. for Higher Educ. (In re Perkins)*, 228 B.R. 431, 433 (Bankr.E.D.Mo.1998); *Jones v. I.T.T. Technical Inst.*, 38 B.R. 968, 971 (Bankr.S.D.Ohio 1984); *Indiana Univ. v. Canganelli*, 149 Ill.App.3d 852, 103 Ill.Dec. 278, 501 N.E.2d 299, 301–02 (1986); Fed. R. Bank. P. 4007 advisory committee's note (1983). Thus, the sovereign immunity of the defendant in this case has cost the debtor only the opportunity to litigate the question of undue hardship in bankruptcy court. She may still do so in the state courts if the state pursues the matter after bankruptcy.

## V.

For the foregoing reasons, the court holds that 11 U.S.C. § 106(a) is unconstitutional and void, that 11 U.S.C. § 106(b) does not apply to this case, and that neither Tennessee nor its agency, TSAC, has waived the state's sovereign immunity, either expressly or by means implied from the filing of a proof of claim. An appropriate order will enter.