In re George Bryan DODSON, a/k/a Bryan Dodson Donna Ann Dodson, a/k/a Donna Ann Humphrey, Debtors.

George Bryan Dodson, Plaintiff,

v.

Tennessee Student Assistance Corporation, Defendant.

Bankruptcy No. 00–35052.
Adversary No. 01–3011.

United States Bankruptcy Court,
E.D. Tennessee.

Feb. 27, 2001.

al, Nashville, for Tennessee Student Assistance Corporation.

## MEMORANDUM ON DEFENDANT'S MOTION TO DISMISS

RICHARD S. STAIR, Jr., Bankruptcy Judge.

The Plaintiff filed a Complaint to Determine Dischargeability of Educational Debt (Complaint) on January 10, 2001, seeking a determination that his debt to the Defendant Tennessee Student Assistance Corporation (TSAC) is dischargeable pursuant to 11 U.S.C.A. § 523(a)(8) (West Supp.2000). On February 7, 2001, TSAC filed a Tennessee Student Assistance Corporation's Motion to Dismiss Complaint for Lack of Ripeness, or in the Alternative, for Lack of Jurisdiction for Eleventh Amendment Grounds (Motion to Dismiss). The Motion to Dismiss was accompanied by a supporting brief. Also before the court is the Plaintiff's Brief in Response and Opposition to Tennessee Student Assistance Corporation's Motion to Dismiss filed on February 14, 2001.

This is a core proceeding. 28 U.S.C.A. § 157(b)(2)(I) (West 1993).

### I

This case was commenced on December 13, 2000, by the Debtors' filing of a Voluntary Petition under Chapter 13. The case was subsequently converted to Chapter 7 by a Notice of Voluntary Conversion filed by the Debtors on February 8, 2001.

At issue in this adversary proceeding is the Plaintiff's $34,227.40 debt owed to TSAC, representing student loans made by, assigned to, or guaranteed by TSAC.[1] By his Complaint, the Plaintiff asks the court to determine that this debt is dischargeable pursuant to the "undue hard-

Keith Edmiston, Hodges, Doughty & Carson, Knoxville, for Plaintiff.

Paul G. Summers, Attorney General and Reporter, State of Tennessee, Marie Antoinette Joiner, Assistant Attorney Gener-

---

1. The $34,227.40 figure is provided in the Plaintiff's Complaint. TSAC has not filed a claim against the estate. In its brief, TSAC incorrectly states that the original lender filed a proof of claim prior to assigning the loan to TSAC. No such claim has been filed.

ship" provision of § 523(a)(8) of the Bankruptcy Code.[2]

In its Motion to Dismiss, TSAC asserts two theories. It first argues that issues of dischargeability will not be ripe for adjudication until the completion of the Debtors' Chapter 13 plan. Without addressing the merits of this argument, the court notes that the Debtors' subsequent conversion to Chapter 7 renders this question moot. The court need therefore only address the Defendant's second theory, that this action is barred by the Eleventh Amendment to the United States Constitution.

## II

■ TSAC is a governmental nonprofit corporation created by statute to administer the state's student assistance programs. *See* TENN. CODE ANN. § 49–4–201 (1996). TSAC is an "arm or agency" of the State of Tennessee. *See Seay v. Tennessee Student Assistance Corp. (In re Seay)*, 244 B.R. 112, 114 (Bankr.E.D.Tenn. 2000). As such, TSAC is clothed with the sovereign immunity traditionally possessed by the states. *Id.* The Plaintiff does not dispute this point.

■ Immunity from suit is "a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution, and which they retain today ...." *Alden v. Maine*, 527 U.S. 706, 119 S.Ct. 2240, 2246–47, 144 L.Ed.2d 636 (1999). This sovereignty is affirmed by the Eleventh Amendment, which directs:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or

by Citizens or Subjects of any Foreign State.

U.S. CONST. amend. XI.

■ The sovereign immunity of the states "derives not from the Eleventh Amendment but from the structure of the original Constitution itself." *Alden*, 527 U.S. 706, 119 S.Ct. at 2254. "The Eleventh Amendment confirmed rather than established sovereign immunity as a constitutional principle ...." *Id.* This principle holds both that each state is a separate sovereign entity within our federal system and that no state is amenable to suit without its consent. *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 116 S.Ct. 1114, 1122, 134 L.Ed.2d 252 (1996).

■ By its terms, the Eleventh Amendment does not appear to bar suits by citizens against their own state. Nonetheless, the Amendment has long been recognized as a bar to such litigation. *See Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890); *see also Alden*, 527 U.S. 706, 119 S.Ct. at 2253.

■ State sovereign immunity, while extensive, is not absolute. *See College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd. (College II )*, 527 U.S. 666, 119 S.Ct. 2219, 2223, 144 L.Ed.2d 605 (1999). There are two recognized situations in which a state can be sued. First, Congress may authorize such a suit as an exercise of its power to implement the Fourteenth Amendment, which was "enacted after the Eleventh Amendment and specifically designed to alter the federal-state balance." *See id.* (citing *Fitzpatrick v. Bitzer*, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976)). Second, sovereign immunity is waived when a state consents to suit. *See College II*, 527 U.S. 666, 119

---

**2.** Section 523(a)(8) provides that a discharge under Chapter 7 does not discharge a debtor from any debt:

for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or

for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents[.]

11 U.S.C.A. § 523(a)(8) (West Supp.2000).

S.Ct. at 2223 (citing *Clark v. Barnard,* 108 U.S. 436, 2 S.Ct. 878, 27 L.Ed. 780 (1883)).

Before determining whether an exception to Tennessee's sovereign immunity exists in this case, it is necessary first to address the Plaintiff's argument that the Eleventh Amendment is not applicable to his Complaint. The Plaintiff characterizes his suit as an action for declaratory judgment and not a suit for damages or retrospective equitable relief. He cites various authority supporting the proposition that the Eleventh Amendment does not apply to suits seeking only declaratory judgment or prospective injunctive relief.

 The Supreme Court has recently considered and rejected this premise. *See Seminole Tribe,* 517 U.S. 44, 116 S.Ct. at 1124. The Court made clear that "the relief sought by a plaintiff suing a State is irrelevant to the question whether the suit is barred by the Eleventh Amendment." *Id.* The Court added that the Eleventh Amendment exists not only to prevent money judgments against a state but also to "avoid 'the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties.'" *Id.* (quoting *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 113 S.Ct. 684, 689, 121 L.Ed.2d 605 (1993)). The Eleventh Amendment therefore governs determination of TSAC's Motion to Dismiss. *See Seminole Tribe,* 517 U.S. 44, 116 S.Ct. at 1124.

### III

 As noted, a state may be sued notwithstanding its traditional sovereign immunity if Congress has validly abrogated the state's immunity or if the state has consented to be sued. *See College II,* 527 U.S. 666, 119 S.Ct. at 2223. The Supreme Court utilizes a two-step inquiry to determine whether Congress has abolished state immunity in a given area. *See Seminole Tribe,* 517 U.S. 44, 116 S.Ct. at 1123. First, Congress must have "unequivocally expresse[d] its intent to abrogate the im-

munity." *Id.* (quoting *Green v. Mansour,* 474 U.S. 64, 106 S.Ct. 423, 426, 88 L.Ed.2d 371 (1985)). Next, Congress must have acted "pursuant to a valid exercise of power." *Id.*

 Section 106 of the Bankruptcy Code addresses waiver of sovereign immunity, providing in material part:

(a) Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to the following:

(1) Sections ... 523 ... of this title.

(2) The court may hear and determine any issue arising with respect to the application of such sections to governmental units.

(3) The court may issue against a governmental unit an order, process, or judgment under such sections or the Federal Rules of Bankruptcy Procedure, including an order or judgment awarding a money recovery, but not including an award of punitive damages. Such order or judgment for costs or fees under this title or the Federal Rules of Bankruptcy Procedure against any governmental unit shall be consistent with the provisions and limitations of section 2412(a)(2)(A) of title 28.

11 U.S.C.A. § 106 (West Supp.2000). One cannot imagine a clearer expression of congressional intent to abrogate state immunity. *See Pitts v. Ohio Dep't of Taxation (In re Pitts),* 241 B.R. 862, 872 (Bankr. N.D.Ohio 1999).

The court must next pair this unequivocal congressional intent with a valid source of constitutional authority. The most obvious source is the Bankruptcy Clause of the United States Constitution. The Bankruptcy Clause, located in Article I, grants Congress the power to "establish ... uniform Laws on the subject of Bankruptcies throughout the United States." U.S.

**640**

CONST. art. I, § 8, cl. 4. This broad authority, however, does not give Congress the power to abrogate state immunity. Even when the Constitution gives Congress "complete law-making authority over a particular area, the Eleventh Amendment prevents congressional authorization of suits by private parties against unconsenting states." *Seminole Tribe*, 517 U.S. 44, 116 S.Ct. at 1131. Article I powers, such as those granted by the Bankruptcy Clause, "cannot be used to circumvent the constitutional limitations placed upon federal jurisdiction." *Id.*, 517 U.S. 44, 116 S.Ct. at 1132; *accord Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 120 S.Ct. 631, 643–44, 145 L.Ed.2d 522 (2000). *Seminole Tribe* thus renders § 106 "unconstitutional in so far as the Section was enacted pursuant to Congress' powers under Article I of the Constitution, and to the extent that it purports to abrogate a state's Eleventh Amendment immunity." *Pitts*, 241 B.R. at 874; *accord Seay v. Tennessee Student Assistance Corp. (In re Seay)*, 244 B.R. 112, 115–16 (Bankr.E.D.Tenn.2000).

The other possible constitutional avenue by which Congress may abrogate state immunity is the Fourteenth Amendment. *See Kimel*, 528 U.S. 62, 120 S.Ct. at 644. The Fourteenth Amendment provides in material part:

> Section 1. . . . No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.
>
> . . . .
>
> Section 5. The Congress shall have power to enforce, by appropriate legislation, the provisions of this article.

U.S. CONST. amend. XIV. The Fourteenth Amendment was enacted after the Eleventh Amendment and was "specifically designed to alter the federal-state balance." *College II*, 527 U.S. 666, 119 S.Ct. at 2223.

Congress' enforcement power under § 5 of the Fourteenth Amendment is remedial in nature. *See Florida Prepaid Postsecondary Educ. Expense Bd. v. College Sav. Bank (College I)*, 527 U.S. 627, 119 S.Ct. 2199, 2206, 144 L.Ed.2d 575 (1999) (Congress may "remedy or prevent unconstitutional actions" but may not take "measures that make a substantive change in the governing law" via the Fourteenth Amendment.) (citing and quoting *City of Boerne v. Flores*, 521 U.S. 507, 117 S.Ct. 2157, 2164, 138 L.Ed.2d 624 (1997)). Additionally, for Congress to invoke its § 5 powers, "it must identify conduct transgressing the Fourteenth Amendment's substantive provisions, and must tailor its legislative scheme to remedying or preventing such conduct." *College I*, 527 U.S. 627, 119 S.Ct. at 2207 ("[W]e must first identify the Fourteenth Amendment 'evil' or 'wrong' that Congress intended to remedy . . . ."). Valid Fourteenth Amendment legislation "respond[s] to a history of 'widespread and persisting deprivation of constitutional rights[.]'" *Id.*, 527 U.S. 627, 119 S.Ct. at 2210 (quoting *City of Boerne*, 521 U.S. 507, 117 S.Ct. at 2167).

Courts considering the constitutionality of § 106 are divided as to whether the Fourteenth Amendment provides sufficient authority for the abrogation of state immunity, with the majority holding that it does not. *Compare Seay*, 244 B.R. at 116 (Fourteenth Amendment is not a valid basis for § 106), *Pitts*, 241 B.R. at 874–76 (same), *and Scarborough v. Michigan Collection Div. (In re Scarborough)*, 229 B.R. 145, 150–51 (Bankr.W.D.Mich.1999) (same), *with Arnold v. Sallie Mae Servicing Corp. (In re Arnold)*, 255 B.R. 845, 853 (Bankr.W.D.Tenn.2000) (Section 106 was validly enacted pursuant to the Fourteenth Amendment), *and Willis v. Oklahoma (In re Willis)*, 230 B.R. 619, 622–23 (Bankr. E.D.Okla.1999) (same). This court, having considered the array of cases addressing the subject, concludes that the Fourteenth Amendment does not grant Congress the

power to terminate state immunity via § 106 of the Bankruptcy Code.

The court agrees with the analysis set forth in *Pitts,* which reasoned that none of the Fourteenth Amendment's individual provisions (the Privileges and Immunities Clause, the Due Process Clause, and the Equal Protection Clause) applies to the privilege of receiving a bankruptcy discharge. *Pitts,* 241 B.R. at 875–76; *but see Mather v. Oklahoma Employment Sec. Comm'n (In re Southern Star Foods),* 190 B.R. 419, 426 (Bankr.E.D.Okla.1995) (finding numerous "privileges and immunities" in the Bankruptcy Code). The *Pitts* court additionally noted that the judiciary should "not presume that Congress intended to enact a law under a general Fourteenth Amendment power to remedy an unspecified violation of rights when a specific, substantive Article I power clearly enabled the law." *Pitts,* 241 B.R. at 876 (quoting *Schlossberg v. Maryland (In re Creative Goldsmiths of Wash., D.C., Inc.),* 119 F.3d 1140, 1146 (4th Cir.1997)); *accord Scarborough,* 229 B.R. at 149. The court also pointed out that the legislative history of § 106 contains no indication that the statute was enacted pursuant to the Fourteenth Amendment, but that the same legislative history contains numerous references to the Bankruptcy Clause. *Pitts,* 241 B.R. at 876.

This court further notes that the Plaintiff cites neither a "Fourteenth Amendment 'evil' or 'wrong' that Congress intended to remedy" nor a corresponding "history of 'widespread and persisting deprivation of constitutional rights.'" *See College I,* 527 U.S. 627, 119 S.Ct. at 2207, 2210; *see also Scarborough,* 229 B.R. at 151 ("There is no specified violation of rights that the Fourteenth Amendment could remedy nor any identifiable act connecting the Bankruptcy Code to recognized Fourteenth Amendment goals."). Accordingly, the court holds that Congress exceeded its constitutional powers by the § 106 abrogation of state sovereign immunity. *Accord Seay,* 244 B.R. at 116 ("This court agrees with the reasoning and the holding in *In re Pitts,* and rather than replowing that same ground it will simply adopt [*Pitts* ] insofar as it finds 11 U.S.C. § 106(a) to be beyond Congress' constitutional powers.").

**IV**

The court must next consider whether the Defendant has waived its sovereign immunity. *See College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd. (College II),* 527 U.S. 666, 119 S.Ct. 2219, 2223, 144 L.Ed.2d 605 (1999).[3] The Tennessee Constitution provides that "[s]uits may be brought against the State in such manner and in such courts as the Legislature may by law direct." TENN. CONST. art. I, § 17. The Tennessee Legislature has enacted a general prohibition of suits against the state, directing:

> No court in the state shall have any power, jurisdiction, or authority to entertain any suit against the state, or against any officer of the state acting by authority of the state, with a view to reach the state, its treasury, funds, or property, and all such suits shall be dismissed as to the state or such officers, on motion, plea, or demurrer of the law officer of the state, or counsel employed for the state.

TENN. CODE ANN. § 20–13–102(a) (1994).

The Plaintiff cites several examples that he asserts combine to form a waiver of

---

3. Because TSAC has not filed a claim, the court need not decide whether such a filing would act as a waiver of the Defendant's sovereign immunity. *See supra* n. 1. Compare *College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd. (College II),* 527 U.S. 666, 119 S.Ct. 2219, 2226, 144 L.Ed.2d 605 (1999) ("Generally, we will find a waiver [ ] if the State voluntarily invokes our jurisdiction ....") *with Seay v. Tennessee Student Assistance Corp. (In re Seay),* 244 B.R. 112, 117–18 (Bankr.E.D.Tenn.2000) (finding the claims allowance process and dischargeability litigation "insufficiently intertwined" to support a waiver of immunity).

TSAC's sovereign immunity. First, he points out that TSAC is "subject to the corporate laws of the state of Tennessee," TENN. CODE ANN. § 49–4–201 (1996), and that the state has disclaimed any liability for the actions of TSAC. TENN. CODE ANN. § 49–4–403 (1996). Next, the Plaintiff cites TSAC's requirement that its lenders and Executive Director abide by applicable federal laws and regulations. *See* Rules of the Tennessee Student Assistance Corporation 1640–1–2–.04(1)(a)(1), 1640–1–5–.05(6) (Dec.2000).

The Plaintiff has also provided the court with a copy of the July 2000 *Common Manual Unified Student Loan Policy* (*Common Manual*), a reference tool copyrighted by "Common Manual Guarantors." The *Common Manual* describes itself as "an introduction to and overview of participation in the Federal Family Education Loan Program." *Common Manual*, § 1.1. The *Common Manual* provides an overview of relevant bankruptcy law and procedures as set out in 34 C.F.R. § 682.402 (2000). *Common Manual*, §§ 8.2.D.-.E., CCI 8.2.D.-.E. The *Common Manual* states that its policies have been adopted by, *inter alia*, TSAC. *Common Manual*, § 1.5. None of these policies clearly address a waiver of sovereign immunity.

The Plaintiff also cites Tenth Circuit authority holding that a state university's contractual adoption of similar C.F.R. provisions reflected "an unequivocal intent" to waive immunity. *Innes v. Kansas State Univ. (In re Innes)*, 184 F.3d 1275, 1282 (10th Cir.1999). The C.F.R. provisions at issue in *Innes*, like those referenced by the *Common Manual*, required participants to suspend collection efforts upon receiving notice of a borrower's bankruptcy filing, file a proof of claim unless the bankruptcy is a no-asset case, and file a response if served with a § 523(a)(8) complaint. *See id.* The *Innes* court held that the state's adoption of these procedures was a knowing and voluntary waiver of sovereign immunity by agreeing "to undertake certain enumerated actions in federal bankruptcy court in the event of a claim for discharge filed by the student-borrower." *Id.* at 1284.

■■■■■ This court respectfully disagrees with the holding in *Innes* and with the Plaintiff's assertion that TENN. CODE ANN. §§ 49–4–201 and 49–4–403, various Rules of the Tennessee Student Assistance Corporation, and the *Common Manual* provisions combine to form a waiver of TSAC's sovereign immunity. TSAC's agreement to follow rudimentary principles of bankruptcy law in response to actions by debtors is neither a "voluntary invocation of federal jurisdiction" nor a "clear waiver" of sovereign immunity, as required by Supreme Court jurisprudence. *See College II*, 527 U.S. 666, 119 S.Ct. at 2226; *see also Janc v. Coordinating Bd. for Higher Educ. (In re Janc)*, 251 B.R. 525, 538–39 n. 22 (Bankr.W.D.Mo.2000) ("Innes . . . runs afoul of the Supreme Court's directive that waivers of Eleventh Amendment immunity must be express."). Neither participation in a federal program nor an agreement to abide by federal law is alone sufficient to waive sovereign immunity. *See Florida Dep't of Health & Rehabilitative Servs. v. Florida Nursing Home Ass'n*, 450 U.S. 147, 101 S.Ct. 1032, 1034, 67 L.Ed.2d 132 (1981); *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 1361–62, 39 L.Ed.2d 662 (1974).

■■■■■ Moreover, the Supreme Court has stressed that "there is 'no place' for the doctrine of constructive waiver in our sovereign-immunity jurisprudence, and . . . we [will] 'find waiver only where stated by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction.' " *College II*, 527 U.S. 666, 119 S.Ct. at 2227 (quoting *Edelman*, 415 U.S. 651, 94 S.Ct. at 1360–61). Waiver must be expressed in "unmistakably clear language." *College II*, 527 U.S. 666, 119 S.Ct. at 2227 (quoting *Welch v. Texas Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 107 S.Ct. 2941, 2948, 97 L.Ed.2d 389 (1987)). Waiver should not be "acci-

dental" and should not be the result of a governmental unit "blunder[ing] into a waiver of [ ] immunity by having failed to appreciate" the consequences of its actions. *Seay v. Tennessee Student Assistance Corp. (In re Seay),* 244 B.R. 112, 119 (Bankr.E.D.Tenn.2000).

██ The instances and authority cited by the Plaintiff fall far short of demonstrating an "unmistakably clear" waiver of TSAC's sovereign immunity. Because § 106 is a constitutionally infirm abrogation of immunity and because TSAC has not waived its state immunity, the court is without jurisdiction to hear the Plaintiff's Complaint.[4] TSAC's Motion to Dismiss will therefore be granted.

---

4. The court's decision does not leave the Plaintiff without a remedy. As noted by the *Seay* court, although his debt will remain nondischargeable in bankruptcy, the Plaintiff:

> may assert undue hardship as an affirmative defense to any attempt by the state to collect its debt post-bankruptcy, for the courts have uniformly held that state courts have concurrent jurisdiction with federal courts over dischargeability determinations

involving student loans. Thus, the sovereign immunity of the defendant in this case has cost the debtor only the opportunity to litigate the question of undue hardship in bankruptcy court. [He] may still do so in the state courts if the state pursues the matter after bankruptcy.

*Seay,* 244 B.R. at 120 (internal citations omitted).